UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| In the Matter of the Complaint of<br>LIQUID WASTE TECHNOLOGY, LLC,<br>d/b/a Ellicott Dredge Technologies, as Owner<br>MUD CAT MFD for Exoneration from or<br>Limitation of Liability,<br>      *Petitioner*. | No. 3:18-cv-01306 (JAM) |

**ORDER GRANTING MOTIONS TO VACATE ORDER OF STAY**

On March 3, 2018, a dredge capsized in the waters of the Long Island Sound in Guilford, Connecticut, resulting in the death of one man and possibly injuries to others. The dredge's owner has filed a special action under this Court's admiralty jurisdiction that seeks to limit its potential liability to solely the value of the dredge. Multiple claimants, however, seek to pursue relief against the owner by means of personal injury actions in Connecticut state court and outside the context of this Court's admiralty jurisdiction.

The question before me is the extent to which these other actions should be allowed to proceed. In light of the stipulations of claimants that adequately preserve the dredge owner's rights to have this Court ultimately adjudicate its rights to a limitation of liability, I conclude that the claimants should be permitted to proceed for now against the dredge owner in state court. Therefore, I will grant the motions to vacate the stay of the four claimants who seek to proceed against the dredge owner in Connecticut state court.

**BACKGROUND**

This admiralty action commenced on August 7, 2018, when petitioner Liquid Waste Technology, LLC, d/b/a Ellicott Dredge Technologies (EDT), filed a complaint for exoneration from or limitation for liability under the Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.* Doc. #1. According to the complaint, EDT owns a dredging vessel known as the "Mud Cat MFD

1

(Multi-Function Dredge)," which it describes as a "self-launching, amphibious dredge" bearing a "heavy duty excavator arm" that can be equipped with a variety of dredging tools. Doc. #1 at 1.

EDT rented the Mud Cat MFD to the Guilford Yacht Club. *Id.* at 2. The Guilford Yacht Club in turn hired Poolscape Pool & Spa, LLC, to operate the Mud Cat MFD. *Id.* at 3. Poolscape employed James Willard and several other individuals who were to be trained in the operation of the Mud Cat MFD to perform dredging operations at the Guilford Yacht Club. *Ibid.*
On March 3, 2018, the Mud Cat MFD capsized, throwing people into the water and resulting in the death of James Willard. *Ibid.*

On August 21, 2018, the Court entered an order approving EDT's affidavit of valuation for $178,000 and ad interim security, and directing issuance of notice and filing of claims. Doc. #9. Most significantly for purposes of this ruling, the Court entered an order restraining and staying the prosecution in any other court of claims against EDT arising from the incident of March 3, 2018. *Ibid.*

In the meantime, six claimants filed answers or claims in this action. Docs. #16, 18, 20. Four of the six claimants—Michelle Willard (spouse of James Willard), Michelle Willard as Administratrix of the Estate of James Willard, Michael Martocci, and Poolscape Pool and Spa, LLC—have subsequently filed motions to vacate the Court's restraining/stay order insofar as it enjoins them from pursuing common law claims against EDT in state court. Docs. #25, 27.

The remaining two claimants—the Guilford Yacht Club and Unit Owners Association at Guilford Yacht Club—have not moved to stay or otherwise participated in the briefing involving the motions to stay. Instead, the Guilford Yacht Club claimants assert that they are "*pro hac vice*" owners of the Mud Cat MFD and have separately filed their own Limitation of Liability Act action. *See In re Guilford Yacht Club Ass'n et al.*, 18cv1629 (D. Conn. 2018).

## DISCUSSION

The Limitation of Liability Act was enacted by Congress in 1851 in order to encourage the development of American merchant shipping and, in particular, to protect ship owners who suffer a misfortune at sea from exposure to liability claims in excess of the value of the ship and cargo. *See Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 447 (2001); *Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 754–55 (2d Cir. 1988). The Act provides that, under certain circumstances, the owner of a vessel may limit its liability for an accident to the value of the vessel and freight, provided that the accident occurred without the owner's privity or knowledge. *See* 46 U.S.C. § 30505. To effectuate this liability protection for the owner, the Act provides that all other claims and proceedings against the owner related to the matter in question must cease pending determination of the owner's right to a limitation of its liability. *Id.* at § 30511; *In re Longshore Sailing Sch.*, 2010 WL 326210, at *1 (D. Conn. 2010).

The protections of the Limitation of Liability Act operate in some tension with the rights afforded by another federal law—the law that gives federal district courts original jurisdiction over admiralty cases. *See* 28 U.S.C. § 1333. That jurisdictional statute provides in relevant part that the "district courts shall have original jurisdiction, exclusive of the courts of the States, of (1) [a]ny civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled*." *Id.* (emphasis added). This final proviso—known as the "saving to suitors" clause—is evidently intended to preserve some rights for suitors to pursue remedies outside the exclusive jurisdiction of a federal admiralty court.

In *Dammers*, the Second Circuit grappled with what it described as a "recurring and inherent conflict in admiralty law: the apparently exclusive jurisdiction vested in admiralty

courts by the Limitation of Liability Act versus the presumption in favor of jury trials and common law remedies embodied in the 'saving to suitors' clause of 28 U.S.C. § 1333." 836 F.2d at 754. To reconcile this conflict it considered the circumstances under which a district court may conditionally lift a stay that it has imposed under the Limitation of Liability Act in order to allow claimants to pursue relief in state court. The Second Circuit concluded that a district court may lift a stay provided that the claimants agree to certain protective stipulations designed to protect the right of the vessel owner to have the district court adjudicate its claim to a limitation of liability under the Act. These stipulations included, for example, that the claimants acknowledge the right of the vessel owner to an eventual adjudication of its limitation of liability claim in the federal district court (thus waiving any claim of *res judicata* effect to be given to any state court judgments); that, pending a determination of the limitation of liability claim in the district court, claimants will not seek to enforce against the vessel owner any state court judgment that may be in excess of the asserted limitation (*i.e.*, the value of the vessel and cargo); and that claimants agree to subordinate their claims for damages against the vessel owner to any assessment of attorney's fees and costs asserted by a co-defendant or party seeking indemnification. *Id.* at 753–54; *see also In re Longshore Sailing Sch.*, 2010 WL 326210, at *3–4 (lifting stay initially imposed under the Limitation of Liability Act subject to similar stipulations).

In accordance with *Dammers*, the four movant claimants here have agreed to enter into the following six stipulations as a condition of the Court's lifting of the stay in order to allow state court actions to proceed:

> 1. The claimants concede and agree that the United States District Court for the District of Connecticut has exclusive jurisdiction over all limitation of liability issues which arise from the capsizing and sinking of the Mudcat MultiFunction Dredge on March 3, 2018, at or near Guilford Yacht Club, Long Island Sound, and that EDT is entitled and has the right to litigate all issues relating in limitation of liability pursuant to the provisions of 46 U.S.C. § 30501 *et seq.*;

2. That claimants concede and agree to waive any claim(s) of *res judicata* pertaining to the issue of limited liability based on any judgment obtained in state court or other proceeding based on the capsizing and sinking of the Mudcat MultiFunction Dredge on March 3, 2018 at or near Guilford Yacht Club, Long Island Sound;

3. That claimants concede and agree that the United States District Court for the District of Connecticut has exclusive jurisdiction to determine the value of the limitation fund, and so long as said claimants, jointly or individually, have had an opportunity to obtain an independent appraisal or related evaluation, claimants will stipulate to the value of the limitation fund as determined by the Court;

4. That claimants concede and agree that should a judgment be obtained in any state court or other proceeding on behalf of the claimants, and should the United States District Court for the District of Connecticut determine that limitation of liability is appropriate, the claimants will seek only their respective proportion of any judgment(s) obtained in any state court or other proceeding;

5. That claimants concede and agree that should a judgment be obtained on behalf of the claimants in any state court or other proceeding against EDT and/or any other liable parties who may cross-claim or claim over against EDT, and if the United States District Court for the District of Connecticut determines that limitation of liability is appropriate and establishes a limitation fund, and said judgments(s) is/are in excess of the value of said limitation fund, in no event will claimants seek to enforce said excess judgment(s) insofar as same may expose EDT to liability in excess of the limitation fund.

6. That claimants concede and agree that, if EDT is held to be responsible for attorneys' fees and costs by a co-liable defendant or party seeking indemnification, then such claims shall have priority over claimants' claims.

Doc. #26 at 5–7; Doc. #27 at 1; Doc. #38 at 5; Doc. #39 at 1.

EDT acknowledges these stipulations but nonetheless opposes the motions to vacate the stay on the ground that the Guilford Yacht Club claimants have neither joined in the motions nor agreed to the protective stipulations proposed by the other claimants. The filings to date reflect that the Guilford Yacht Club claimants do not claim direct injuries caused by EDT but will seek indemnification or contribution from EDT to the extent that the Guilford Yacht Club claimants may be held liable as a co-defendant with EDT in a state court action. Docs. #20, 21, 23.

Although it would surely be preferable for the Guilford Yacht Club claimants to have entered into similar stipulations, I agree with the remaining claimants' argument that the Court will remain positioned to protect the limitation of liability interests of EDT, not only because of the Guilford Yacht Club's consent to the Court's jurisdiction over this case (as well as its filing in this Court of its own limitation action, *see In re Guilford Yacht Club Ass'n et al.*, 18cv1629 (D. Conn. 2018)), but also because of the remaining claimants' stipulation (Stipulation #5) that they shall not prematurely pursue a state court judgment in excess of the limitation-of-liability amount against either EDT or any other co-liable parties such as the Guilford Yacht Club claimants who might cross-claim for indemnification or contribution against EDT. *See N. E. Marine, Inc. v. Boody*, 2012 WL 4482794, at *11–12 (E.D.N.Y.) (describing how *Dammers* does not necessarily require that protective stipulations be entered by all claimants in similar circumstances), *report and recommendation adopted*, 2012 WL 4482772 (E.D.N.Y. 2012).

I have considered arguably contrary authority outside of the Second Circuit, *see In re Complaint of Holly Marine Towing, Inc.*, 270 F.3d 1086 (7th Cir. 2001), and *In re Urbelis*, 2016 WL 4579120, at *4 (D. Mass. 2016), but conclude for the reasons stated in *Dammers* and *Boody* that not all potential claimants need to join in stipulations in order to provide adequate protection of EDT's rights under the Limitation of Liability Act. In the event of a change in circumstances that would prematurely expose EDT to excess liability prior to the Court's determination of EDT's entitlement to its claimed limitation of liability, then EDT may seek an order of relief from the Court to ensure that its rights under the Limitation of Liability Act are adequately protected consistent with the rights of claimants under the savings-to-suitors clause.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the motions to vacate the Court's order of stay (Docs. #25 and #27) to the extent that the four claimants—Michelle Willard, Michelle Willard as Administratrix of the Estate of James Willard, Michael Martocci, and Poolscape Pool and Spa, LLC—may proceed to prosecute claims for relief against Liquid Waste Technology, LLC, d/b/a Ellicott Dredge Technologies (EDT), in the state courts of Connecticut.

It is so ordered.

Dated at New Haven this 31st day of January, 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge